Filed 7/19/13 In re S.J. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.J., a Person Coming Under the Juvenile Court Law. | B243729 |
| | (Los Angeles County Super. Ct. No. NJ 26068) |
| THE PEOPLE, Plaintiff and Respondent, v. S.J., Defendant and Appellant. | |

APPEAL from an order of the Superior Court for the County of Los Angeles. John C. Lawson II, Judge. Affirmed in part; reversed in part.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

In this delinquency case, the juvenile court permitted the district attorney, on the day of adjudication and over the objection of defense counsel, to amend the petition to allege a second felony, assault by force likely to produce great bodily injury, in addition to the original allegation of second degree robbery. The court found both allegations true. On appeal, the minor's counsel filed a *Wende* brief (*People v. Wende* (1979) 25 Cal.3d 436) requesting this court's independent review of the record.

We requested additional briefing and now reverse the true finding on the assault allegation under the authority of *In re Robert G.* (1982) 31 Cal.3d 437, 445 (*Robert G.*) ("a wardship petition . . . may not be sustained upon findings that the minor has committed an offense or offenses other than one specifically alleged in the petition or necessarily included within an alleged offense, unless the minor consents to a finding on the substituted charge"). We find no other arguable issues, and affirm the true finding on the allegation of second degree robbery.

## FACTS

The district attorney filed a petition on July 24, 2012, alleging S.J., then 16 years old, came within the provisions of Welfare and Institutions Code section 602, in that she committed second degree robbery, a felony (Pen. Code, § 211). The minor denied the allegations.

When the case was called for adjudication on August 10, 2012, the prosecutor moved to add the crime of assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). Defense counsel objected to the addition of a new count on the adjudication date. The court permitted the amendment "over defense objection" and immediately proceeded with the testimony.

The prosecutor presented testimony of the victim, C.A., and a security guard who was in the vicinity at the time and observed the incident.

The victim testified she was walking by herself in San Pedro and saw four other girls, one of whom was the minor. She had known the minor since the ninth grade. One of the four girls, C.J., called the victim's name and asked the victim if she was "talking to

2

her behind her back." The victim said "no," and then "got approached by [the minor]." The minor told the victim that "she was going to jump me." Then another of the girls said that "she wanted to fight me." Then the minor "said, again, . . . they were going to jump me." The victim "got kicked in my back, and that's when [the minor] hit me. [¶] I got pushed to the floor. And then I started getting jumped by all four[] girls. That is when I was being pinned down. [¶] [The minor] grabbed my purse, and started emptying everything in my purse including my cell phone and wallet, and other valuables in my purse."

The victim further testified that, while she was on the ground, one of the other girls took away her purse. Then, "as I was being pinned down, that is when [the minor] and [another girl, A.W.,] started taking everything out of my purse, taking out everything." The victim saw her phone, wallet and three bottles of lotion taken out of her purse, "[a]nd everything else was just dumped out." The prosecutor asked if the minor took any of those items, and the victim replied: "Yes, she took the lotion out of my purse, and [the minor] also opened up the bottle of lotion, and emptied it out . . . ." Then a man at a nearby shop came out and "tried to get them off me," and a security guard also came out and "was pushing them away from me."

The victim testified "[t]hat stopped the fight," but then A.W. was arguing with the man from a nearby shop, "and then while I was being held back, like, I also got attacked again. [¶] Because the guy asked me if I wanted to press charges, and I said yes, and that is when [A.W.] also attacked me again." A.W. hit her from the back, then "she got pulled off, and they all left." Later that day, the police went to the girls' homes and arrested them.

The victim testified a cell phone, wallet, $70 and three bottles of lotion were taken. She said A.W. "stepped on [the cell phone]." The victim did not get her cell phone, wallet, money or lotion back; she got her purse back and a little compact in the purse. She was asked if she saw any of the girls do anything with the property and answered, "No, just walking away with all of it." When asked if she saw the minor with any of her property, she said, "Yes, my cell phone," and said the cell phone was in the

3

minor's hand when she walked away. On cross-examination, the victim denied telling the police another of the girls (Q.M.) took her cell phone and was the one who walked away with it, but admitted telling the police "[Q.M.] was the one that originally grabbed [her] bag and stomped on [her] cell phone," "smashing it, breaking it." She said that at the beginning, "[Q.M.] had my phone, but then when everybody was clearing out, that is when I saw [the minor] with my phone." She did not see who had the wallet.

Karl Stephens, a security guard who saw the incident, testified he "saw three girls – three teenagers attacking one teenager," "three teenagers, girls was attacking, kicking, punching, pulling her hair, that type of stuff," and "cussing her," "taking her bags," and "throwing things out of her bags, and stuff like that." He stopped the attack for a minute, but it started again and then the person from a nearby shop came out and helped him to stop it. He saw the girls dump the victim's purse out. They "just threw it out, all of her cosmetic stuff from her bag, scattered it all over the street." The guard "saw them physically take stuff out of the purse, but I didn't see, physically see, anyone take it, or, like, put it in their pocket or stuff, but everything was happening very fast." None of the girls ran away from the scene; they all walked away.

The prosecution then rested, and defense counsel moved to dismiss the petition, arguing that "despite the witness's testimony, there was no intent to steal any items from [the victim], and that count 1 [(robbery)] should be dismissed." The court denied the motion.

The defense presented two witnesses, Los Angeles Police Officer Salvador Sanchez and the minor. When Officer Sanchez arrived in response to a radio call of a robbery, the victim told him she had just been jumped and her property taken; she said she was robbed of her cell phone, wallet, money and some other items. The victim told Officer Sanchez about the confrontation with the four girls, who ended up kicking her and hitting her. The girl who initially called the victim over was C.J. The girl who grabbed items from the victim, and who "somehow got a hold of her cell phone, and stomped on it a few times," was Q.M. The victim told Officer Sanchez that, "while the [girls] were holding down the victim on the ground,[Q.M.] was also able to remove the

4

other items from the purse . . . ." The victim did not tell Officer Sanchez she saw anyone leave with her cell phone, and the victim "couldn't tell who took any of her property."

Officer Sanchez testified he interviewed the other suspects, including Q.M.. Defense counsel sought to question Officer Sanchez about what Q.M. said to him, to show it was Q.M. who picked up the purse and dumped the purse, consistent with the victim's statement to Officer Sanchez but not with the victim's in-court testimony. After much discussion, the court found defense counsel was trying to elicit a declaration against interest, not a party admission, and to do so had to establish the unavailability of the witness.

Cross-examination continued, with Officer Sanchez testifying the victim told him two of the girls were holding her down on the ground, "and that was when [Q.M.] was able to go through the purse freely and get a hold of her items," and Q.M. dropped the cell phone on the ground and stepped on it. The victim also told Officer Sanchez that the minor hit her and was one of the two girls who held her down while Q.M. was going through her purse.

The minor testified, admitting she pushed the victim, "and that is when [Q.M.] had hit her, and I hit her, and then [A.W.] snatched her by her hair and slammed her to the ground. [¶] And I kicked her, and [Q.M.] and I got up off of her after hitting her, and dumped all her stuff out her purse, took her cell phone, and stomped on it, and after she hit me, and put lotion on her." She said she did not ever go through the victim's belongings, take any of her property, or touch any of her property, and that Q.M. was the one who stepped on the victim's cell phone, and "kept stepping on it." She spoke to Officer Sanchez about what happened at the police station.

Defense counsel recalled Officer Sanchez to question him about what the minor said to him about what happened to the victim's property. After an objection and colloquy with the court, defense counsel offered the testimony as a prior consistent statement, with probative value because "robbery . . . is a specific intent crime." Officer Sanchez then testified the minor said she saw Q.M. go through the victim's property, and dump out lotions from the purse on to the victim.

5

The juvenile court sustained the petition, finding both allegations true beyond a reasonable doubt. The court said, "you wanted to start this fight. And aiding and abetting, and I'm sure your attorney has explained to you what aiding and abetting is. [¶] I don't care if you touched that purse. You held that girl down. You are just as guilty. You are just as guilty."

The court found that count 1 (the robbery) was a strike, as the minor was 16 at the time. The court placed the minor home on probation, declared a maximum period of confinement of five years as to the robbery count, and said the court would "run the 245(a)(4) concurrently."

The minor filed a timely appeal.

## DISCUSSION

The minor's court-appointed counsel filed a *Wende* brief. Our review of the record showed that the district attorney's petition alleged only the crime of second degree robbery. On the day the case was adjudicated, the juvenile court allowed the prosecutor, over defense objection, to amend the petition to add the crime of assault by force likely to produce great bodily injury, and immediately proceeded with the testimony. We asked for briefing on the question whether the juvenile court's true finding on the added assault allegation was proper in light of *Robert G.*, *supra*, 31 Cal.3d 437. We now conclude it was not proper.

As the parties agree, due process of law "'requires that a minor, like an adult, have adequate notice of the charge so that he may intelligently prepare his defense.' [Citation.]" (*Robert G.*, *supra*, 31 Cal.3d at p. 442.) Compliance with this due process requirement "has been held by the Supreme Court to mandate that the minor 'be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.'" (*Ibid.*, quoting *In re Gault* (1967) 387 U.S. 1, 33.) While notice is adequate when the trier of fact is permitted to find an accused guilty of an offense necessarily included in the charged offense, or

6

expressly pleaded in the charging allegations, the parties here also agree, correctly, neither of these principles applies.

Robert G. is dispositive. In Robert G., the juvenile court substituted a charge of battery for the original charge of assault with a deadly weapon, after the close of evidence in a juvenile proceeding. Robert G. held a wardship petition "may not be sustained upon findings that the minor has committed an offense or offenses other than one specifically alleged in the petition or necessarily included within an alleged offense, unless the minor consents to a finding on the substituted charge." (Robert G., supra, 31 Cal.3d at p. 445.) Here, the minor did not consent, but specifically objected "to the addition of a new count on the adjudication date."

The attorney general contends notice of the additional charge was adequate because the petition was amended before the presentation of any evidence, rather than after (as in Robert G.), so the minor "had time to modify her defense if needed." We cannot agree. When testimony ensues immediately after a petition is amended to add a new felony allegation, the minor has not been given notice of the new charge "'sufficiently in advance of the hearing to permit preparation.' [Citation.]" (Robert G., supra, 31 Cal.3d at p. 442; see In re Gault, supra, 387 U.S. at p. 33 ["[n]otice at that time [at a hearing on the merits] is not timely"]; In re Roy C. (1985) 169 Cal.App.3d 912, 917-918 [where petition was amended at the close of prosecutor's case-in-chief and before any defense proffered by the minor, prejudice "had already attached because of the lack of adequate notice of the new charge, whether or not a defense was presented or regardless of the nature of such defense"]; see also In re Johnny R. (1995) 33 Cal.App.4th 1579, 1584 [Robert G. was applicable where juvenile court permitted an amendment during the prosecution's case; the minor "had never been put on notice of a need to defend against the weapons charge"].)

Nor is there any merit in the attorney general's further claim that, if counsel "needed more time to prepare, she could have requested a continuance." Counsel specifically objected to amending the allegations on the day of the adjudication, and nothing more was required. (Cf. In re Roy C., supra, 169 Cal.App.3d at p. 915 ["no

7

continuance was offered to prevent prejudice to [the minor]"].) In short, as *Robert G.* stated, "we are not persuaded that due process of law is as malleable as the People here contend." (*Robert G., supra,* 31 Cal.3d at p. 445.)

We conclude the true finding on the allegation of assault by force likely to produce great bodily injury must be reversed, but otherwise find no arguable issues on appeal. The evidence presented to the juvenile court was sufficient to allow the court to conclude beyond a reasonable doubt the minor committed the crime of second degree robbery as charged in the petition, and no other error appears.

## DISPOSITION

The true finding on the second count of the petition, assault by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), is reversed. In all other respects, the judgment is affirmed.

GRIMES, J.

We concur:

RUBIN, Acting P.J.

FLIER, J.